### HEBERT v. BROWN et al.

(Circuit Court, D. Minnesota, Fifth Division. January 7, 1895.)

PUBLIC LANDS—TITLE.

L. made application for a pre-emption entry, and some months later gave a mortgage on the land covered thereby. Six months thereafter he relinquished his pre-emption claim, and immediately filed a homestead entry on the same land. *Held*, that the mortgage was extinguished by the relinquishment, and did not attach to the homestead entry.

This was a suit by Louis Hebert against Cyrus E. Brown and others to quiet title to certain lands. The cause was heard on the pleadings and proofs.

R. R. Briggs, for complainant.
Gilfillan, Belden & Willard, for defendant John M. Watts.

NELSON, District Judge. This is an action brought by complainant, a citizen of the state of Wisconsin, against defendants Brown, Hedderly, and Watts, citizens of the state of Minnesota, and Pasqual Leveque, a citizen of the state of Maine, to quiet title to a certain 160 acres in the county of Itasca, state of Minnesota, and to restrain the three defendants first named from cutting and removing the timber therefrom. None of the defendants except Watts make answer to the bill. On March 10, 1884, Pasqual Leveque filed a declaratory statement for a pre-emption of the land in controversy, under the United States land laws, and submitted his final proofs for cash entry before the register and receiver of the Duluth land office, July 1, 1884. A special agent of the government appeared at that time to cross-examine the witnesses introduced to sustain the entry, and upon the proof submitted the register and receiver made a divided report. The former in his report to the commissioner of the general land office, dated December 12, 1884, refused to recommend an approval, in which action the receiver, in a supplemental report, acquiesced, at the same time stating that he had some information which, in his opinion, justified a rehearing; and on February 13, 1885, the same was ordered by the commissioner. On the 6th day of April, 1885, Leveque filed a voluntary relinquishment in writing to the United States of his right and claim under his pre-emption declaratory statement, stating that he could not produce the receipt given him at the time, as it was not in his possession; and on the same day he filed his application, under section 2289, Rev. St. U. S., for a homestead entry of the very same land, made the necessary affidavit, paid the compensation required by law, and received a receipt for the same. When the rehearing was had, May 18, 1885,

a new receiver of the land office had been appointed, and the register and receiver, ignoring the relinquishment of Leveque of April 6, 1885, proceeded with the examination, and reported a recommendation that Leveque's proofs be accepted as of July 4, 1884, the day when presented and payment tendered. The money was furnished by one C. E. Brown, an employé of the Martin Lumber Company, who had previously furnished the money for the declaratory statement under the pre-emption claim. On July 25, 1885, the commissioner, on the proof submitted in the report to him of May 18, 1885, declared the pre-emption filing a fraud, and canceled the same. Previously, on December 5, 1884, before the register and receiver had made their reports to the commissioner in regard to the proofs first made in the Leveque pre-emption claim, Leveque gave a mortgage to C. E. Brown, with covenants of warranty, on the land upon which he had made his pre-emption claim, to secure two promissory notes payable to the order of Brown of even date, one for $600 due in 60, and the other for $500 due in 90 days after date. This mortgage was recorded in the proper county, March 30, 1885. It was, with other mortgages, assigned by Brown to one Hedderly, January 23, 1890, and subsequently, April 16, 1890, assigned by him to J. M. Watts. Both these assignments were duly recorded. The mortgage was foreclosed by advertisement, January 18, 1893; the land was sold March 9, 1893, and purchased by Watts; and the usual sheriff's certificate given therefor, which was recorded two days later. On June 29, 1887, Leveque, under the provisions of sections 2259 and 2301, Rev. St. U. S., made a cash payment for the land he had entered as a homestead, April 6, 1885, and on September 10, 1888, sold and conveyed the same to Louis Hebert, the complainant. A patent was subsequently issued to Leveque, April 11, 1889.

Under this state of facts, what are the rights of the defendant Watts? When Brown took the mortgage for security, he knew that Leveque had no title to, but had simply filed a pre-emption claim on, the land. Leveque had no vested right, but merely an inchoate undetermined claim, liable to be defeated by his own act, or by that of the government, if he did not carry out the provisions of the law; and Brown took the mortgage, with all its weaknesses and imperfections. The instant Leveque relinquished his pre-emption claim, which he had a legal right to do, the land became a part of the public domain, and could have been taken immediately by another pre-emptor or homesteader, and, of course, Brown's mortgage would have been no lien on the land. Even if Leveque had not relinquished his pre-emption claim, the same state of affairs would have supervened when his filing was canceled by the commissioner for fraud. I cannot agree with the proposition that the mortgage on the pre-emption claim attached to and followed the homestead entry of the same land. The two proceedings are entirely distinct. Whatever land Leveque entered, whether that in dispute or any other tract, would come to him from the government clear and free of all incumbrance, In this view of the case, I hold that the sheriff's certificate cannot be set up as a defense against the title of complainant. It being of rec-

ord, a cloud is cast thereby upon Hebert's title, which he is entitled to have removed. Judgment will be entered for the complainant, with costs, in accordance with the prayer of the bill.