35 N.J. Super. 562 (1955)
114 A.2d 560
HENRY NEUMANN, IND. AND JACOB ERICH NEUMANN, BY HIS GUARDIAN AD LITEM, HENRY NEUMANN, PLAINTIFFS-APPELLANTS,
v.
HELMUT H. WILDERMANN, T/A BOULEVARD PORK STORE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided May 26, 1955.
*564 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Arthur A. Donigian argued the cause for appellants.
Mr. William R. Morrison argued the cause for respondent (Mr. John E. Selser and Mr. Benedict E. Lucchi, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs contracted trichinosis, allegedly suffered as a result of eating "schinken" (ham) purchased from defendant. They sued for damages, recovery being sought on two theories: implied warranty that the food was fit for human consumption, and negligence. The jury returned a unanimous verdict of no cause of action in favor of defendant. Plaintiffs' appeal from the resultant judgment entered on the verdict is based on claimed irregularities in the verdict.
In its charge the court had carefully and fully set out the two theories on which plaintiffs sued, and defendant's denial of any implied warranty or negligence. It then posed several questions for resolution by the jury, among them those relating to defendant's negligence and breach of implied warranty. These were followed by a detailed restatement of the two legal propositions and plaintiffs' burden of proving them. Thus, the trial judge informed the jury in the clearest language as to what the theories of the case were and what it had to find. Nonetheless, when the jury returned from its deliberations (these lasted slightly over half an hour) the record shows the following happened:
"The Clerk: Members of the Jury, have you agreed upon a verdict?
The Foreman: We have.
The Clerk: What do you find?
The Foreman: We find the defendant not guilty of negligence.
*565 The Clerk: By that you mean no cause of action, an unanimous verdict?
The Foreman: Yes.
The Clerk: * * * You say you find no cause of action in favor of the defendant Helmut H. Wildermann, trading as The Boulevard Pork Store, as against the plaintiff Henry Neumann, individually, and Jacob Erich Neumann, by his guardian ad litem, Henry Neumann, and so say you all?
The Jurors: We do."
Plaintiffs' attorney then called the court's attention to the fact that the jury had made no finding on the question of warranty, and specifically requested the court to instruct the jury on this question and "have them deliberate and have a finding on that count." The answer of the court to the objection was  and this happened in the jury's presence  "Well, the jury has returned a verdict of no cause of action." When counsel said this was not so, the following ensued:
"The Court: I will ask each juror, and I will poll the Jury for the purpose of ascertaining whether the verdict is in favor of the defendant and against the plaintiffs, no cause for action. Now, you will understand that this passes upon all questions involved in the case. You understand? We all understand?
The Jurors: That is right.
The Court: The question is, is the verdict of the Jury `No cause for action in favor of the defendant and against the plaintiffs'? Those who are in favor of that will say `yes'; those who are against it will say `no.'"
The clerk proceeded to poll the jurors individually, and each one answered "yes." The clerk then announced "An unanimous verdict, no cause."
In our opinion, this sequence of events prejudiced plaintiffs' cause. Not only did the clerk initially set the stage for a no cause of action verdict, but the emphasis thus given was strengthened by what the court said thereafter. The trial judge iterated and reiterated the theme of "no cause of action." The fact that the court eventually told the jury that it would poll it for the purpose of "ascertaining whether the verdict is in favor of the defendant and against the *566 plaintiffs, no cause for action," and the jurors were to understand they were passing upon all questions involved, does not save the situation.
It is familiar law that a verdict is bad if it varies from the issue in a substantial manner, finds only a part of that which is in issue, or fails to determine all the issues submitted to the jury. Patterson v. United States, 2 Wheat 221, 15 U.S. 221, 4 L.Ed. 224 (1817), is the basic case; the principle there announced by Mr. Justice Washington was adopted in Middleton v. Quigley, 12 N.J.L. 352, 354 (Sup. Ct. 1831), and reaffirmed in Schneider v. Marinelli, 62 N.J.L. 739, 741 (E. & A. 1899), affirming 61 N.J.L. 177 (Sup. Ct. 1897).
The essential distinction relative to the solution of this appeal is that between a judicial molding or correction of a verdict imperfect in a formal sense and not going to the substance of the verdict, and a substantial change or alteration of a verdict deficient in some fundamental. It is clear that the verdict first rendered by the jury through its foreman, finding defendant "not guilty of negligence," was a fundamentally deficient verdict in the light of the fact that two of the four counts of the complaint were based upon a breach of implied warranty of fitness. Plaintiff was entitled to a verdict covering all counts and all issues in the case. Had plaintiffs' case been based solely upon negligence, the jury verdict of "not guilty of negligence" would have been one deficient in form only and thus properly subject to correction by the court. But that is not the situation before us.
When the jury brought in the defective verdict it was the duty of the trial judge to ask it to reconsider and return a proper verdict, first explaining that plaintiffs' action was based upon implied warranty as well as negligence, that there were four counts  one on each theory and as to each plaintiff  and that the jury should return a separate verdict on each count unless its conclusion was for defendant on all counts, in which event a general verdict of no cause of action in favor of defendant and against plaintiffs would be acceptable.
*567 The decision of the Maryland Court of Appeals in Heinze v. State, 184 Md. 613, 617-618, 42 A.2d 128, 130-131 (1935) is informative:
"It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge. It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation. Ford v. State, 12 Md. 514, 546; Hechter v. State, 94 Md. 429, 443, 50 A. 1041, 56 L.R.A. 457; State v. Foulds, 127 N.J.L. 336, 23 A.2d 895; Grant v. State, 33 Fla. 291, 14 So. 757, 23 L.R.A. 723, 735; Denham v. Commonwealth, 119 Ky. 508, 84 S.W. 538; Kuenzli v. State, 208 Wis. 340, 242 N.W. 147; United States v. Frankel, 2 Cir., 65 F.2d 285; 2 Bishop, New Criminal Procedure, 2d Ed., sec. 1004.
If a verdict is defective merely in form, and the meaning of the jury is clear, it is proper for the judge to suggest the correction in the presence of the accused without requiring the jury to return to their room. State v. Jankowski, 82 N.J.L. 229, 82 A. 309; Quinn v. State, 123 Ind. 59, 23 N.E. 977; State v. Cary, 124 Kan. 219, 257 P. 719. When, however, it becomes necessary to amend a verdict in substance, it is the safer practice to send the jury back to their room with instructions as to the corrections that ought to be made, so that they can amend the verdict as they think proper unhindered by the presence and possible influence of others. The law does not permit the judge to suggest the alteration of a verdict in substance. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province. * * *"
The court clerk suggested a general verdict for defendant and the court, we are convinced, effectively reenforced the suggestion. The trial judge, in the words of the Heinze case, threw the weight of his influence into the deliberations of the jury. It was wrong for him to ask the jurors whether or not they agreed with his recasting of the verdict as being "No cause for action in favor of the defendant and against the plaintiffs." This procedure by the court, though unquestionably projected in good faith, exhibits the same vice as a leading *568 question put to a witness on direct examination. It tends to suggest the answer. The impropriety of a leading question is magnified many times when the answer thereto determines the entire litigation, and particularly is this so when it is posed by the trial judge, whom the jury naturally holds in great respect.
What the court did here was materially prejudicial to plaintiffs, and the judgment should, therefore, be reversed and a new trial had.