The defendant was convicted by a jury of the crime of interfering with an officer, in violation of General Statutes 53a-167a.[1] He has appealed from the judgment rendered thereon, claiming as error the court's instructions to the jury and its acceptance of the jury's verdict. *Page 401 
The jury could reasonably have found the following facts: On November 6, 1980, officer John Graves of the Groton town police was on duty and in full uniform when he was dispatched at about 3 a.m. to investigate a disturbance at the Melody Lounge. When his cruiser arrived at the scene, he observed a crowd of sixty to seventy people in the parking lot, as well as two police cruisers. He also noticed an individual talking to two police officers when suddenly a commotion erupted nearby. As the crowd converged around these two officers, Graves ran toward them and, in order to ensure their safety, attempted to separate the officers from the crowd. To accomplish this he pushed members of the crowd away from the officers and ordered others to move back. At this point he encountered the defendant, who was trying to get into the crowd around the officers. Graves pushed the defendant back and told him to move away. The defendant refused and said that he did not have to go anywhere. He then pushed Graves, whereupon the officer hit him with his nightstick and grabbed him. As the defendant attempted to pull away, Graves placed him under arrest. When he persisted, Graves sprayed him with mace. As Graves led the defendant through the crowd, he again attempted to pull away. Graves then threw him to the ground, handcuffed him and, when he refused to get up, placed him in the cruiser with the assistance of another officer.
The defendant's first claim of error is that the court failed to instruct the jury on one of the essential elements of the offense of interfering with an officer; namely, that at the time of the occurrence the officer was lawfully engaged in the performance of his duties as a peace officer. He further claims that the court's charge concerning General Statutes 53a-23 confused the jury.[2] We note, however, that no requests to charge were filed *Page 402 
nor were any exceptions taken to the charge as given.[3]
We confine our review, there fore, to the sufficiency of the court's charge as given.
Our examination of the record discloses that the trial court emphasized to the jury that the arresting officer had to be "in the performance of his duties." In this regard, there was ample evidence for the jury to find that the officer was on duty and in full uniform when he pulled into the parking lot in his police cruiser and attempted to quell a volatile situation. Accordingly, "the words [in the performance of his duties] as used in the charge required no further explanation. They were applied by the court to the facts involved in their nontechnical and commonly accepted meaning. A reasonably intelligent and literate person would have no difficulty in understanding them and no further explanation was necessary." D'Addario v. American Automobile Ins. Co., 142 Conn. 251, 256, 113 A.2d 361 (1955).
The defendant also relies on State v. Anonymous (1977-5), 34 Conn. Sup. 531, 375 A.2d 417 (1977), wherein an exception to the charge was taken, as the basis for the defendant's claim that the court erred by charging the jury concerning the effect of 53a-23. That case is inapposite, however, since the erroneous charge there arose solely in connection with a forcible entry into a dwelling and no such entry was involved here. *Page 403 
The defendant's second claim of error concerns the procedure by which the verdict was returned and the judgment of conviction rendered. When the jury returned with their verdict, they were asked if the accused was guilty or not guilty as charged. The foreman responded that there were two counts. It was then ascertained that the original two count information charging interfering with an officer and resisting arrest had been mistakenly submitted to the jury, rather than the substitute information charging a single count of interfering with an officer. The court noted that the jury had reached a verdict of not guilty on the interfering count and guilty on the nonexistent count of resisting arrest, but it refused to accept or announce this verdict. The jury were instructed to return and deliberate only on the one count of interfering with an officer, and they subsequently returned a verdict of guilty on this charge.
The defendant claims that the jury's initial verdict was an acquittal of the charge of interfering with an officer and, therefore, that the court should not have refused to accept this verdict. He argues that by sending the jury back to deliberate, which resulted in a guilty finding, the court deprived him of his constitutional guarantee against double jeopardy.
There is no question that the double jeopardy prohibition of the fifth amendment represents a fundamental ideal in our constitutional heritage that applies to the states through the fourteenth amendment. Benton v. Maryland, 395 U.S. 784, 794,89 S.Ct. 2056, 23 L.Ed.2d 707 (1968). "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as *Page 404 
well as enhancing the possibility that even though innocent he may be found guilty." Id., 795-96, quoting Green v. United States, 355 U.S. 184,187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). "The prohibition against double jeopardy has been stated to mean, fundamentally, that no person shall be twice tried and punished for the same offense." Green v. United States, supra, 187; Kohlfuss v. Warden, 149 Conn. 692, 696,183 A.2d 626, cert. denied, 371 U.S. 928, 83 S.Ct. 298,9 L.Ed.2d 235 (1962). This prohibition has been held to provide three related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." United States v. Wilson,420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232
(1974), quoting North Carolina v. Pearce, 395 U.S. 711,717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
Applying these principles to the present case, we conclude that the trial court did not place the defendant in double jeopardy when it sent the jury back to reconsider its verdict. "[W]here there is no threat of multiple punishments or successive prosecutions, the Double Jeopardy Clause is not offended." United States v. Wilson, supra, 344.
Lastly, although the defendant does not specifically claim this as error, we note that the court did not err when, pursuant to General Statutes 52-223, it returned the jury to reconsider their verdict.[4] While this statute does not expressly address the reason *Page 405 
that the jury in this case was returned — namely, because the wrong information had been submitted to them — the case law reveals that the statute has been liberally construed, and not merely confined to its literal terms.
Thus, in State v. Searles, 113 Conn. 247, 255,155 A. 213 (1931), our Supreme Court noted: "When there is uncertainty as to the actual intent of the jury, the power of the court in a criminal case to return them to their room to render a clear and unambiguous verdict, is, in this country, recognized as indispensable to an orderly and impartial administration of justice. The thing to be ascertained is the intention of the jury in their finding, in order that the proper sentence of law may follow; and it may be stated generally that when a jury returns an informal, insensible or repugnant verdict, or one that is not responsive to the issues, they may be directed by the court to reconsider it and bring in a proper verdict. Owens v. State, 82 Miss. 18, 33 So. 718,720, 21 L.R.A. (N.S.) 782, 783 [1903]; Grant v. State, 33 Fla. 291, 14 So. 757, 23 L.R.A. 723, 725 [1894]." (Emphasis added.) Furthermore, in Black v. Griggs, 74 Conn. 582, 584-85, 51 A. 523
(1902), the court stated: "While the remarks of the court to the jury in so returning them, either regarding the evidence or regarding matters of law, are subject to review on appeal as a part of the charge . . . the power given by the statute to the court to so return the jury is largely a discretionary one, the reasonable exercise of which, in the absence of erroneous instructions to the jury in returning them, will not be reviewed by this court, especially when it appears that the verdict finally accepted is not, by reason of the charge made, contrary to the law or the evidence." See State v. Searles, supra, 257. Applying these principles, we conclude that "[i]n view of the uncertainty as to what verdict the jury really intended when first *Page 406 
reporting, the trial court exercised its discretion wisely in returning them for further consideration." Ibid.
Apart from these general principles, our conclusion is supported by a number of specific cases. For example, the court in Budovsky v. Hadhazi, 95 Conn. 388, 391, 111 A. 179 (1920) held that when the jury returns a verdict on a matter that was not in issue, as was the nonexistent charge herein, then the jury were properly returned to deliberate. Moreover, it was the duty of counsel as well as the court to ascertain what papers were delivered to the jury. State v. Tucker, 75 Conn. 201, 203, 52 A. 741 (1902). Finally, after being returned, the jury had the power to change its initial verdict; Towhill v. Kane, 147 Conn. 191, 194, 158 A.2d 251 (1960); Budovsky v. Hadhazi, supra; since "[u]ntil their verdict is accepted by the court it is no verdict at all." State v. Avcollie, 174 Conn. 100, 104,384 A.2d 315 (1977), quoting State v. DiPietro,120 Conn. 537, 538-39, 181 A. 716 (1935); State v. Searles, supra, 256.[5] Accordingly, we find no abuse of discretion by the trial court in clarifying the verdict.
 There is no error.
In this opinion COVELLO and F. HENNESSY, Js., concurred.