**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0350-23

JEFFREY TODD and
GINA TODD,

     Plaintiffs-Appellants,

v.

WILLIAM J. BAUDER, III,

     Defendant-Respondent,

and

POLICE & FIREMEN'S
INSURANCE ASSOCIATION,

     Defendant.

_____

Argued October 23, 2024 – Decided December 24, 2024

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2730-15.

David P. Levine argued the cause for appellants (Hanus & Parsons, LLC, attorneys; David P. Levine, of counsel and on the briefs).

John C. Simons argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; John C. Simons, of counsel; Richard J. Mirra, of counsel and on the brief).

PER CURIAM

Plaintiff[1] Jeffrey Todd appeals from the trial court's July 25, 2023 order denying his application for the court to mold the jury verdict to include a workers' compensation lien. Following our review of the record and the applicable legal principles, we affirm.

I.

Plaintiff, a Holmdel police officer, and defendant William Bauder were involved in an altercation in July 2013. Plaintiff testified defendant became confrontational during a traffic stop and refused to remain in his car while plaintiff wrote out a summons. While taking defendant down to the ground to arrest him, plaintiff struck the left side of his face and forehead. He also claimed he struck his elbow and knee on the pavement. Plaintiff testified the EMTs bandaged his elbow, which later swelled up like a "grapefruit."

---

[1] Jeffrey Todd's wife, Gina Todd, was also a named plaintiff and joins in this appeal. However, because the issues involved in this appeal do not relate to the specific aspects of her claim, and for ease of reference, we refer to plaintiff in the singular.

Plaintiff alleged, as a result of defendant's negligence, that he suffered injuries, including an aggravation of his underlying Meniere's disease.[2] Plaintiff's and defendant's experts both testified at trial and disagreed whether the altercation caused a worsening of the Meniere's disease or whether his complaints were a result of the progressive nature of the disease.

The jury returned a verdict finding both plaintiff and defendant were negligent in their conduct and their respective negligence was the proximate cause of the incident. The jury apportioned responsibility between the parties as follows: eighty-five percent as to defendant and fifteen percent as to plaintiff. Jury interrogatory six read: "What amount of money will fairly and reasonably compensate . . . plaintiff . . . for his pain, suffering, disability, and loss of enjoyment of life proximately caused by the incident . . . ?" The jury awarded plaintiff $25,000 in damages, resulting in a net award of $21,500 plus interest.[3]

Prior to trial, defendant filed a motion in limine to bar plaintiff from admitting evidence of any medical expenses or the workers' compensation lien

---

[2] Plaintiff's expert described Meniere's disease as "classically a combination of episodic vertigo, fluctuating hearing loss, and roaring tinnitus." Plaintiff suffered from Meniere's disease for several years prior to this incident and had previously undergone surgeries for the condition. He required further surgery following this incident.

[3] Gina Todd was not awarded any damages for her per quod claim.

A-0350-23

during the trial. The court found the medical expenses and liens were not admissible at trial, and further stated "[t]he issue of medical bills [would] be addressed by the [c]ourt at the time of [t]rial. Reimbursement of medical bills is limited to the amount paid by the [w]orkers' [c]ompensation [c]arrier." Moreover, the court noted, "reimbursement of . . . medical expenses under the . . . lien [is] to be addressed post-trial, based upon the [determination] of causation." The court's order stated the "[a]mount of [the] lien to be molded at [t]rial depend[s] upon [the j]ury's [v]erdict."

Post-trial, plaintiff submitted a proposed order for judgment for $239,156.03, which included the workers' compensation lien. Plaintiff claimed there was a pretrial agreement between the parties to mold the verdict to include medical expenses and temporary disability benefits paid by workers' compensation. Defendant asserted the verdict could only be molded if the jury found causation between defendant's actions and the aggravation of plaintiff's Meniere's disease.

The trial court agreed with defendant and declined to mold the jury verdict to include the workers' compensation lien. The court based its decision on the jury: "reject[ing] plaintiff's argument[,] . . . cho[osing] to award a modest amount to . . . plaintiff[,] and disput[ing] the causal relationship of the

4

aggravation of the Meniere's disease and resulting surgeries to the subject incident." Further, the court found "plaintiff failed to demonstrate, by a preponderance of the credible evidence, that the treatment included in the worker[s'] compensation lien and the temporary disability benefits were proximately caused by the event in question."[4]

The court's decision was based on the jury's damage award in the amount of $25,000. The court determined that plaintiff would have received a far greater award from the jury had it found causation between the aggravation of plaintiff's Meniere's disease and defendant's actions. It concluded the jury's verdict did not find proximate causation between defendant's conduct and the aggravation of plaintiff's pre-existing condition.

This appeal followed.

## II.

## A.

Plaintiff argues the trial court erred as a matter of law by failing to mold the verdict to include the workers' compensation lien and enforcing counsel's pretrial agreement. He contends the "issue of . . . damages regarding wages and

---

[4] The court also referenced that plaintiff's credibility "was questioned throughout the entire jury trial."

 A-0350-23

medical bills w[as] not left to the jury as it was agreed amongst counsel, and placed on the record . . . that any verdict in favor of . . . plaintiff would be molded to include" the workers' compensation lien.  Plaintiff relies on Kassick v. Milwaukee Electric Tool Corp. for the proposition that a trial court may not mold a verdict according to its perception of the jury's view.  120 N.J. 130 (1990).  Plaintiff further contends he did not assert a claim for anything other than an aggravation of his pre-existing Meniere's disease, and the court did not provide a basis as to how the jury rejected plaintiff's claim, despite the damages award being in the low range for the extensive injuries he claimed.

Plaintiff maintains that if the jury had clearly rejected his claims it would have awarded no damages.  He argues "the [t]rial [c]ourt's finding that . . . plaintiff failed to prove his case by a preponderance of the credible evidence, is tantamount to the [t]rial [c]ourt substituting its opinion for that of the jury."  He further contends the defense could have requested a special interrogatory.  He claims that "[a]s the party with the burden of proof, there would be no reason for . . . plaintiff to request additional jury interrogatories."

Regarding the court's comments that the jury would have awarded much more in damages if it found proximate cause between the incident and the aggravation of plaintiff's pre-existing condition, plaintiff asks, "[w]hat . . .

6

amount of money awarded [to plaintiff] . . . would pierce th[e] imaginary threshold . . . where the parties, and the [c]ourt would accept that the jury . . . found causal relationship?" Plaintiff contends it would be speculation to try to determine what was in the minds of the collective jury in rendering its decision.

Defendant counters that plaintiff misstates the agreement between the parties. He maintains the trial court correctly confirmed the parties only agreed to mold the verdict to include the medical bills and temporary disability benefits paid by workers' compensation if the jury determined the July 2013 incident caused an aggravation of plaintiff's Meniere's disease. He asserts the jury's low verdict "clearly evinces" that it rejected this causal relationship, and plaintiff's credibility was "shredded" in all aspects of the case. He also argues the damages award was more than fair, given plaintiff's testimony regarding the injuries he sustained to his elbow and knee. Moreover, defendant contends the jury could have believed, even though it was disputed, that plaintiff also struck his head on defendant's body, but that it was not severe enough to aggravate his pre-existing condition.

Defendant further argues it was plaintiff's responsibility to request a special interrogatory addressing the workers' compensation lien and that plaintiff bears the burden of proof on proximate cause as a matter of law.

 A-0350-23

Defendant noted plaintiff benefitted from the agreement between the parties by not having to pay an expert to testify as to the medical bills. Moreover, if there was a flaw in the jury verdict form, the remedy is a new trial—not to mold the verdict—and plaintiff did not request a new trial or appeal regarding this issue. Defendant also relies on Kassick, asserting that a court can only mold a verdict where the court can decipher "the plainly manifested intention of the jury." 120 N.J. at 135 (quoting Turon v. J. & L. Constr. Co., 8 N.J. 543, 552 (1952)).

B.

We review de novo a trial court's conclusions of law. Balsamides v. Protameen Chem., Inc., 160 N.J. 352, 372 (1999); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

When a trial court "molds" a verdict, it should give "deference to a jury's findings[,] . . . [and] also . . . may not 'mold' a jury verdict according to its perception of the jury's view." Kassick, 120 N.J. at 135. "A verdict may be molded in consonance with the plainly manifested intention of the jury, and judgment entered accordingly." Turon, 8 N.J. at 552. "Once the jury is discharged, both trial and appellate courts are generally bound to respect its decision, lest they act as an additional and decisive juror." Kassick, 120 N.J. at 135-36. Moreover, "when a plaintiff presents multiple grounds for relief and

8

the jury returns a general verdict without specifying the ground on which it has relied, a reviewing court should not identify[,] as a matter of law[,] the ground on which the jury necessarily relied." Id. at 136.

Although we affirm the trial court's order, we do so for a different reason than those stated by the court. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (applying the well-settled principle "that appeals are taken from orders . . . and not from opinions," and that orders may be affirmed for reasons different from those set forth by the trial court (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))). We part company with the trial court regarding its rationale that the damage award was so low the jury could not have determined there was a causal link between defendant's conduct and the aggravation of plaintiff's Meniere's disease. Rather, we conclude one cannot discern from the amount of the jury's damages award what it concluded as to whether the aggravation of plaintiff's Meniere's disease was proximately caused by the altercation with defendant.

The parties agreed to mold the verdict if the jury found the aggravation of plaintiff's Meniere's disease was "related" to defendant's actions. However, the jury was not asked to make a specific determination regarding the causality

9

between the altercation and the alleged aggravation of the Meniere's disease. It is not the trial court's or this court's province to guess what the jury was thinking.

It is for this same reason we are unpersuaded by plaintiff's argument that the jury must have found proximate cause regarding his aggravation claim because it awarded him damages, even though modest in amount. While plaintiff's attorney focused during closing arguments on the aggravation of plaintiff's pre-existing condition, the jury was not limited to considering only this aspect of damages.[5] The jury also heard testimony regarding plaintiff's injuries to his elbow, knee, and head.

In the absence of a special interrogatory squarely addressing causation, the trial court could not reasonably determine the jury's view on the dispute. To do so would be impermissible speculation. In short, while we agree the trial court should not have molded the verdict to include the workers' compensation lien, we reach this conclusion for a different reason.

Moreover, contrary to plaintiff's arguments, it was not defendant's responsibility to request that the court formulate a special interrogatory to address this issue. It was—at all times—plaintiff's burden to prove damages and

---

[5] While the jury may consider the arguments of counsel, nothing the attorneys say is evidence, and their comments are not binding upon the jury. Model Jury Charges (Civil), 1.12C, "Role of the Attorneys" (rev. June 2019).

A-0350-23

proximate cause. Furthermore, plaintiff concedes it would be speculation to try to determine what was in the minds of the collective jury in rendering its decision. Plaintiff's suggested remedy—that the court mold the verdict to account for the workers' compensation lien—is equally speculative. The trial court could not reasonably conclude that the jury in fact found proximate cause between the incident and the alleged aggravation of plaintiff's Meniere's disease, particularly where plaintiff suffered other injuries in the altercation, coupled with the fact the jury was not specifically asked to address the damages associated with the aggravation of his underlying condition.

The trial court correctly did not mold the jury verdict to include the lien. See Kassick, 120 N.J. at 135. When a jury does not specify the grounds for its verdict, a court is not free to determine on what grounds the jury decided the case. See id. at 136. The jury here was not asked to address the question concerning causation between the incident and the aggravation of plaintiff's Meniere's disease. It is unknown if the jury's verdict contemplated a causation finding between defendant's actions and the aggravation of the underlying condition, or if the jury's finding of causation was limited to other injuries sustained by plaintiff. Without a specific verdict tied to a special interrogatory indicating there was causation between defendant's actions and the aggravation

11

of plaintiff's Meniere's disease, the court correctly decided not to mold the verdict. See id. at 135.

To the extent we have not specifically addressed any other contentions raised by plaintiff, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0350-23